UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT JOHNSON,<br><br>     Petitioner,<br><br> v.<br><br>RANDY BLADES, Warden,<br><br>     Respondent. | Case No. 1:14-cv-00492-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

   Pending before the Court is Petitioner Robert Johnson's Petition for Writ of Habeas Corpus, and Petitioner's Supplement to that Petition, filed pursuant to 28 U.S.C. § 2254. (Dkt. 3, 11.[1]) The Court takes judicial notice of the records of Petitioner's state court proceedings. *See* Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

   Petitioner has filed a Motion for Appointment of Counsel, which is now ripe for adjudication. (Dkt. 31.)

   Respondent has filed a Motion for Summary Dismissal, arguing that Petitioner's claims are procedurally defaulted and that many are noncognizable. (Dkt. 20.) Petitioner

---

[1]   The Court considers these documents together as the operative Petition in this case.

**MEMORANDUM DECISION AND ORDER - 1**

has filed a response to the Motion, and Respondent has filed a Reply. (Dkt. 24, 28.) Petitioner received permission to file a sur-reply (Dkt. 34), which was due on July 6, 2016. However, Petitioner has not yet filed the sur-reply. Rather, Petitioner filed a Motion for a 60-day Extension of Time, as well as a Motion for Suspension of Case Activity. (Dkt. 36, 40.)

Because the current record appears sufficient for the Court to enter a final decision, this Memorandum Decision and Order will set forth the Court's preliminary analysis as to the Motion of Summary Dismissal and provide Petitioner with a final opportunity to submit a sur-reply. Accordingly, the Court enters the following Order conditionally granting Respondent's Motion for Summary Dismissal. Petitioner may file a sur-reply within 30 days after entry of this Order, setting forth any reason why the Court should not enter a final dismissal order based on its analysis in this Order. If Petitioner does not file a timely sur-reply, or if the sur-reply fails to alter the Court's analysis in this matter, final judgment will be entered in favor of Respondent.

## BACKGROUND

In 1994, Petitioner pleaded guilty in the Fifth Judicial District in Gooding County, Idaho, to two counts of first-degree murder.[2] (State's Lodging A-3.) He was sentenced to life imprisonment without the possibility of parole. (State's Lodging A-4.) Petitioner did not file a direct appeal of his convictions or sentence. (Pet., Dkt. 3, at 2.)

---

[2]     For a statement of the underlying facts of the "very gruesome attack" committed by Petitioner and his co-defendant, *see State v. Johnson*, 899 P.2d 989, 990-991 (Idaho Ct. App. 1995), the decision affirming the convictions and sentence of Petitioner's co-defendant, Thomas Petersen.

In 1995, Petitioner filed a pro se petition for state post-conviction relief, alleging ten claims of ineffective assistance of trial counsel. (State's Lodging B-1 at 3-8.) An attorney was appointed to represent Petitioner. The trial court dismissed the petition, holding that Petitioner had not alleged sufficient facts that would establish ineffective assistance. (*Id.* at 71.) The Idaho Court of Appeals addressed all ten claims and affirmed the dismissal. (State's Lodging C-3.) Petitioner did not file a petition for review in the Idaho Supreme Court, and the Idaho Court of Appeals issued the remittitur. (State's Lodging C-4.)

In July 2009—over a decade later—Petitioner filed a second petition for state post-conviction relief and was later appointed counsel. (State's Lodging D-1 at 1-7.) In support of a motion for discovery, Petitioner submitted an affidavit from his co-defendant, Thomas Peterson. In the affidavit, dated March 10, 2009, Peterson stated that Petitioner was very drunk the night of the murders, "to the point of barely walking," and that Peterson threatened to kill Petitioner if he did not do what Peterson said. According to Peterson, he told all of this to the prosecutor before trial but that the prosecutor "had [Peterson] lie by pointing the finger at [Petitioner]." (State's Lodging D-3, Ex. A.) Peterson signed another affidavit in December 2009, stating that the interviews in which he took full responsibility were recorded, but that a police officer removed one of the tapes from the tape recorder "and put it in his shirt pocket." (State's Lodging D-8 at 3.)

Based on Peterson's affidavits, Petitioner alleged that the prosecutor withheld evidence of Peterson's statement—including an audio tape—that Peterson was solely

responsible for the murders and that, if Petitioner had known of the existence of the evidence, it "would have stopped [Petitioner] from [entering into] a plea agreement" because Petitioner "had not committed a crime" and would have asserted a duress defense.[3] (State's Lodging D-1 at 2.)

The state district court dismissed the petition, holding that the petition was untimely and barred by Idaho Code § 19-4908, which prohibits the filing of a successive petition unless the petitioner shows a "sufficient reason" why the claims were not asserted or were inadequately raised in the initial post-conviction petition. The court also held that the claims failed on the merits. (State's Lodging D-1 at 26-37.) Petitioner appealed.

The Idaho Court of Appeals addressed only the timeliness issue, holding that the four months between the date of Peterson's initial affidavit and the date that Petitioner filed the successive petition was not a reasonable time, and that the petition was therefore untimely. (State's Lodging E-5.) Although the Idaho Supreme Court initially granted review, it later dismissed the petition for review as improvidently granted. (State's Lodging E-8, E-11.)

Petitioner returned to the state district court and filed a third petition for post-conviction relief. (State's Lodging F-1 at 5-10.) The court summarily dismissed the petition. The Idaho Court of Appeals affirmed, concluding that—because the third petition for post-conviction relief raised the same claims as the second petition—the

---

[3]     Petitioner also claimed that his initial post-conviction counsel rendered ineffective assistance by withholding information regarding the statement and by failing to inform Petitioner about a conflict of interest.

doctrine of claim preclusion (also known as res judicata) barred the third petition. (State's Lodging G-7.) The Idaho Supreme Court denied review. (State's Lodging G-10.)

In the instant federal habeas corpus petition, Petitioner asserts the following claims:

Claim 1: That the prosecutor committed misconduct and deliberately withheld evidence of a co-defendant's confession, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Claim 2: That the withheld evidence, combined with the prosecutor's threat to seek the death penalty, rendered Petitioner's guilty plea invalid.

Claim 3: That Petitioner received ineffective assistance of post-conviction review counsel, as to attorney Swenson, based on Swenson's failure to disclose the issue of the *Brady* material.

Claim 4: That Petitioner received ineffective assistance of post-conviction counsel, as to attorney Heida, based on Heida's failure to conduct discovery, to amend the state post-conviction petition, or to present evidence regarding the *Brady* material.

Claim 5: That the prosecutor committed misconduct and deliberately withheld evidence of a rape examination, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Claim 6: That Petitioner received ineffective assistance of post-conviction counsel, as to attorney Heida, based on counsel's failure to conduct discovery, to amend the state post-conviction petition, or to present evidence of certain information Heida learned during telephone conversations with Petitioner's co-defendant.

Claim 7: That Petitioner received ineffective assistance of post-conviction counsel, as to attorney Heida, based on Heida's failure to conduct discovery, to amend the

|  |  |
|---|---|
|  | state post-conviction petition, or to present evidence related to the issue of timeliness. |
| Claim 8: | That Petitioner was denied his right to due process and equal protection as a result of Heida's behavior in the post-conviction review proceeding. |
| Claim 9: | That Petitioner was denied his right to due process and equal protection with respect to the post-conviction review court's imposition of a 42-day time limit to file a successive post-conviction petition. |
| Claim 10: | That Petitioner received ineffective assistance of post-conviction review counsel, as to attorney Heida, based on Heida's failure to pursue an "addition[al] *Brady* claim." |
| Claim 11: | That Petitioner was denied his right to due process and equal protection when the Idaho Supreme Court determined that there is no right to the effective assistance of post-conviction counsel. |
| Claim 12: | That Petitioner was denied his right to due process and equal protection when the Idaho Court of Appeals misapplied state law principles of claim preclusion on review of Petitioner's third post-conviction petition. |
| Claim 13: | That Petitioner was denied his right to due process and equal protection when the Idaho Court of Appeals and the state district court "ignored facts, information and evidence . . . as to the timeliness of the [second post-conviction] petition." |

(Dkt. 3, 11.)

The Court previously reviewed the Petition and allowed Petitioner to proceed on

his claims to the extent those claims "(1) are cognizable in a federal habeas corpus action,

(2) were timely filed in this Court, and (3) were either properly exhausted in state court or

subject to a legal excuse for any failure to exhaust in a proper manner." (Initial Review Order and Order Lifting Stay, Dkt. 14, at 4 (footnote omitted).)

## PRELIMINARY MOTIONS

### 1.    Petitioner's Motion for Suspension of Case Activity

The only brief yet to be filed on the pending motions is Petitioner's sur-reply in opposition to Respondent's Motion for Summary Dismissal. Petitioner has filed a Motion for Suspension of Case Activity, stating that he has suffered a stroke and has suffered a loss of vision; therefore, Petitioner cannot read or write and is unable to submit the sur-reply. (Dkt. 40.) Petitioner states that the therapy necessary for his rehabilitation will take "months if not years." (Dkt. 40 at 2.) Petitioner asks that the Court stay the case until (1) Petitioner regains the ability to read and write, and (2) the Court appoints counsel for Petitioner. Petitioner was able to find another inmate to draft his Motion for Suspension of Case Activity, but he has been unable find one who is willing to draft his sur-reply.

However, a sur-reply in this case is unnecessary. Although—in an abundance of caution—the Court granted Petitioner leave to submit a sur-reply, the current briefing is sufficient for the Court to determine whether Petitioner's claims are subject to summary dismissal. Respondent's reply in support of the Motion for Summary Dismissal does not raise new issues. Instead, it merely responds to the arguments raised by Petitioner in his opposition brief. (*See* Dkt. 28 at 2.)

The Court will not place this case on hold indefinitely. The Court understands that Petitioner's stroke has placed him in a difficult position. However, it does not appear that Petitioner is unable to protect his interests or is otherwise incompetent. Therefore,

Petitioner's Motion will be denied, though Petitioner will have a final opportunity to submit his sur-reply.

**2.      Motion for Appointment of Counsel**

Petitioner also seeks appointment of counsel. There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or an evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

At this stage of the proceedings, the Court must address two narrow procedural issues: (1) whether some Petitioner's claims are even cognizable, and (2) whether Petitioner properly presented his federal habeas claims to the Idaho Supreme Court and, if he did not, whether Petitioner can establish a legal excuse for that failure. The appointment of counsel is not required for the resolution of these issues.

Further, it appears from Petitioner's filings that he has been able to adequately bring his claims and protect his interests to date. The Court understands that Petitioner does not have legal training or legal resources. Therefore, the Court independently reviews the case citations and references provided by the state for accuracy and

applicability. The Court also does its own research to determine whether other cases not cited by the State apply. Finally, the appellate review process before the Ninth Circuit is available to ensure that the case has been adjudicated according to the proper legal standards.

For these reasons, the Court will deny Petitioner's Motion for Appointment of Counsel.

## MOTION FOR SUMMARY DISMISSAL

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

Respondent argues that Claims 3, 4, 6, 7, 8, 9, 10, 11, 12, and 13 are noncognizable and that all of Petitioner's claims are procedurally defaulted. For the reasons that follow, the Court agrees.

### 3. Claims 3, 4, 6, 7, 8, 9, 10, 11, 12, and 13 Are Not Cognizable in this Habeas Corpus Action

Federal habeas corpus relief may be granted only for violations of *federal* law. 28 U.S.C. § 2254(a); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). In addition, claims of error during state post-conviction proceedings cannot be heard in federal habeas review. *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam). And there is no federal constitutional right to counsel during state post-conviction proceedings.[4] *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987).

For these reasons, Claims 3, 4, 6, 7, 8, 9, 10, 11, 12, 13—all of which allege ineffective assistance of post-conviction counsel or other errors in Petitioner's state post-conviction proceedings—are subject to dismissal as noncognizable. The only cognizable claims in the Petition are Claims 1, 2, and 5.

### 4. All of Petitioner's Claims Appear Subject to Summary Dismissal as Procedurally Defaulted

In addition to the noncognizability of Claims 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, it appears that all of the Claims in Petitioner's Petition—including Claims 1, 2, and 5—are subject to dismissal as procedurally defaulted.

---

[4] Though ineffective assistance of post-conviction counsel is not a freestanding constitutional claim, in limited circumstances it may constitute cause for the procedural default of claims of ineffective assistance of trial counsel, pursuant to the equitable doctrine established by the Supreme Court in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). The *Martinez* exception was later extended by the Ninth Circuit, in *Nguyen v. Curry*, 736 F.3d 1287, 1293-94 (9th Cir. 2013), to apply to underlying claims of ineffective assistance of direct appeal counsel.

### A.    Standard of Law

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it

because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman*, 501 U.S. at 750.

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard . . . is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made

application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.* (internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (stating that "when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded," and holding that a state waiver rule was not independent because, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

### B.   *Petitioner's Claims Are Procedurally Defaulted*

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and addressed on the merits in the state court appellate proceedings.

Petitioner did not file a direct appeal. He did pursue post-conviction relief, but after the Idaho Court of Appeals affirmed the dismissal of his initial post-conviction petition, Petitioner did not file a petition for review with the Idaho Supreme Court. *See O'Sullivan*, 526 U.S. at 847. Therefore, no federal claims were exhausted in either Petitioner's direct criminal proceedings or his initial post-conviction proceedings.

The trial court dismissed Petitioner's second petition for post-conviction relief in part as untimely. In affirming that decision, Idaho Court of Appeals applied *Charboneau v. State*, 174 P.3d 870, 874-75 (Idaho 2007). In *Charboneau*, the Idaho Supreme Court held that a successive post-conviction petition must be filed within a reasonable time of

discovery of the basis of the claims asserted in the successive petition. The "reasonable time" requirement is inherent in the "sufficient reason" requirement in Idaho Code § 19-4908, and an "analysis of 'sufficient reason' permitting the filing of a successive petition must necessarily include an analysis of whether the claims being made were asserted within a reasonable period of time." *Id*. at 875. What constitutes a reasonable time depends on the circumstances and must be determined "on a case-by-case basis." *Id*. Respondent asserts that *Charboneau*'s "reasonable time" requirement is not an adequate and independent state procedural ground.

*Charboneau* was decided over a year-and-a-half before Petitioner filed his second post-conviction petition and, therefore, was well-established by the time the Idaho Court of Appeals considered Petitioner's second post-conviction petition. Further, Respondent has cited two cases that applied *Charboneau* before Petitioner filed his successive petition, *Schwartz v. Idaho*, 177 P.3d 400, 402-405 (Idaho App. 2008), and *Drennon v. State*, 2008 WL 9467750 (Idaho App. 2008) (unpublished), and Petitioner has not pointed to any Idaho case where *Charboneau* was inconsistently applied, or where it should have been applied but was not.

Petitioner also argues that the reasonable time requirement as applied in his case was not clear, well-established, and regularly applied because he was actually held to a strict, 42-day time limit—the amount of time considered presumptively reasonable for purposes of successive petitions in capital cases[5]—and that this time limit has not been

---

[5]    In *Pizzuto v. State*, the Idaho Supreme Court held that a successive petition for post-conviction relief in a capital case must be filed no later than 42 days "after the petitioner knew or reasonably should

applied in other noncapital cases. (Dkt. 24 at 2-3.) However, the Idaho Court of Appeals did not impose such a limitation. Rather, the court found that Petitioner had notice of his *Brady* claims, at the latest, on March 10, 2009, the date of Peterson's initial affidavit, but that Petitioner did not file his second post-conviction petition until more than four months later. The court of appeals determined that *four months* was an unreasonable delay—it did not require Petitioner to have filed his petition within 42 days. (State's Lodging D-5 at 5.)

Further, that Idaho's "reasonable time" rule is applied on a case-by-case basis does not render that rule inadequate. *See Beard*, 558 U.S. at 61; *Walker*, 562 U.S. at 318. Petitioner has not established that the reasonable time requirement, based on Idaho Code § 19-4908 and *Charboneau*, is an inadequate state procedural ground or that it is dependent on federal law. Therefore, the claims raised in Petitioner's second post-conviction petition are procedurally defaulted.

The court of appeals' rejection of the claims in Petitioner's third post-conviction petition was also based on an adequate and independent state procedural ground: the doctrine of res judicata or claim preclusion. Petitioner has not shown that this state-law

have known of the claim, unless the petitioner shows that there were extraordinary circumstances that prevented him or her from filing the claim within that time period." 202 P.3d 642, 649 (Idaho 2008). The 42-day successive petition deadline in capital cases is based on the 42-day time limit for filing an *initial* post-conviction petition in a capital case. *Id.*

In noncapital cases, an initial post-conviction petition must be filed within one year "from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later." Idaho Code § 19-4902(a). In Petitioner's case, the Idaho Court of Appeals "decline[d] to extend the rationale of *Pizzuto* to conclude that a reasonable time for filing a successive application in a noncapital case is one year." (State's Lodging E-5 at 4.) The court stated that "[w]hile *Charboneau* was decided one year prior to *Pizzuto*, the [Idaho Supreme] Court's decision in *Pizutto* [sic] was limited to capital cases and did not expressly overrule *Charboneau*'s reasonable time standard for successive applications filed in noncapital cases." (*Id.*)

doctrine was not well-established and regularly applied at the time of the court of appeals' decision. *See* Idaho Code § 19-4908 (stating that "[a]ny ground finally adjudicated . . . in any . . . proceeding the applicant has taken to secure relief may not be the basis for a subsequent [post-conviction] application" absent a "sufficient reason"); *Knutsen v. State*, 163 P.3d 222, 228 (Idaho Ct. App. 2007) ("Knutsen already challenged the length of his sentence on state law reasonableness grounds in his direct appeal. The principles of res judicata apply when an applicant attempts to raise the same issues previously ruled upon on direct appeal in a subsequent application for post-conviction relief."); *see also McKinney v. State*, 992 P.2d 144, 156 (Idaho 1999) ("The following claims are barred [in successive post-conviction proceedings in this capital case] because McKinney actually raised them in his first petition for post-conviction relief . . . ."). The rule is also independent because it does not rely on any determination of federal law.

For the foregoing reasons, all of the federal claims presented in the instant habeas Petition are procedurally defaulted.

### C.    *Petitioner Has Not Shown Cause and Prejudice, or Actual Innocence, to Excuse the Procedural Default of His Habeas Claims*

That Petitioner's claims are procedurally defaulted does not end the inquiry. If a claim is procedurally defaulted, a federal district court can still hear the merits of that claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim

is not heard in federal court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal *procedural* arguments that, if sufficiently established by the petitioner, allow a federal court to consider the merits of a procedurally-defaulted constitutional claim.

      i.      <u>Cause and Prejudice: Ineffective Assistance of Initial Post-Conviction Counsel</u>

Petitioner argues that his post-conviction counsel rendered ineffective assistance, causing the default of his claims. (Dkt. 42 at 3-4.) However, the general rule is that ineffective assistance of post-conviction counsel cannot be used as cause to excuse the procedural default of constitutional claims. *Coleman*, 501 U.S. at 752. The only exception to this rule applies to substantial claims of ineffective assistance of trial or direct appeal counsel—claims that Petitioner does not assert in the Petition. *Martinez*, 132 S. Ct. 1309; *Nguyen*, 736 F.3d at 1293-94. The Ninth Circuit has specifically held that the *Martinez* cause-and-prejudice exception does not apply to claims—like Claims 1, 2, and 5—that rely on *Brady v. Maryland*. *See Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013).

Petitioner also states that the prison paralegal put the wrong address on one of Petitioner's filings, "causing delays in filing due to the time it took to go to and back from the prosecutor, re-doing pages with dates of mailing, scheduling for new copies and mailing." (Dkt. 24 at 5.) However, Petitioner does not provide any detail as to the length

of these alleged delays. His conclusory statements that the paralegal's actions caused delay, unsupported by any other evidence, are insufficient to constitute cause. Further, Petitioner has not shown prejudice from these actions because he has not explained how one filing sent to the prosecutor, rather than the court, caused a *four-month* delay.

Therefore, Petitioner has not shown that cause and prejudice excuse the procedural default of his habeas claims.

ii.    Actual Innocence

Petitioner also asserts that he is actually innocent, which would excuse the default of his claims. (Dkt. 24 at 8.) Actual innocence, as an exception to procedural default, "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old

and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653

F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual

innocence analysis "does not turn on discrete findings regarding disputed points of fact,

and '[i]t is not the district court's independent judgment as to whether reasonable doubt

exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting

*Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a

probabilistic determination about what reasonable, properly instructed jurors would do."

*Schlup*, 513 U.S. at 329.

When a district court is considering whether to grant an evidentiary hearing on the

miscarriage of justice exception, it has the discretion to assess the reliability and

probative force of the petitioner's proffer, including making some credibility

determinations, if necessary. *Schlup*, 513 U.S. at 331-332. Although "habeas petitioners

who assert convincing actual-innocence claims [need not] prove diligence to cross a

federal court's threshold," a court "'may consider how the timing of the submission and

the likely credibility of a petitioner's affiants bear on the probable reliability of evidence

of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (quoting *Schlup*, 513

U.S. at 332) (alterations omitted).

Petitioner has submitted no reliable evidence that he is actually innocent. Indeed,

even if the Court were to accept Peterson's statements and the evidence of "duress" as

true, the Court could not conclude that every reasonable juror would have voted to acquit

Petitioner. As the trial court explained in its decision on Petitioner's second post-

conviction petition, Petitioner freely engaged in at least one felony that led to the murders and, therefore, would not have been able to rely on a duress defense against the felony murder charges. (State's Lodging D-1 at 36 (noting that Petitioner had acknowledged that Peterson was not in the room—and therefore was not actively threatening Petitioner— while Petitioner was raping one of the victims).)

Petitioner has not established factual innocence to excuse the procedural default of his claims. Thus, the Court need not address Respondent's argument that petitioners who pleaded guilty are prohibited from asserting actual innocence as an excuse for the default of claims brought under 28 U.S.C. § 2254.

## CONCLUSION

Claims 3, 4, 6, 7, 8, 9, 10, 11, 12, and 13 are noncognizable in this federal habeas corpus action. Further, all of Petitioner's claims—including Claims 1, 2, and 5—are procedurally defaulted, and there does not appear to be a legal excuse for that default. Therefore, Respondent's Motion for Summary Dismissal will be conditionally granted.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Appointment of Counsel (Dkt. 31) is DENIED.

2. Petitioner's Motion for a 60-Day Extension of Time to File the Sur-Reply (Dkt. 36) is GRANTED.

3. Petitioner's Motion for Suspension of Case Activity (Dkt. 40) is DENIED.

4. Respondent's Motion for Summary Dismissal (Dkt. 20) is CONDITIONALLY GRANTED. If Petitioner intends to file sur-reply, he must do so **within 30 days** after entry of this Order.

5. Petitioner is reminded that the sur-reply may not be used to raise arguments that could have been, but were not, raised in Petitioner's initial opposition brief. The sur-reply need not contain case citations or extensive argument, and should simply present any facts that contravene Respondent's assertions in the reply or otherwise support Petitioner's arguments. Petitioner may attempt to have another inmate assist him in this regard.

6. If Petitioner does not submit a timely sur-reply, or if the sur-reply does not alter the Court's analysis, the Court will enter final judgment in favor of Respondent.

7. The Court will not consider any further extensions of time in this matter.

DATED: January 9, 2017

Edward J. Lodge
United States District Judge